UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ERIC WARREN HEFTY** and<br>**CHERYL RAE HEFTY**,<br><br>　　　　　　　　　Debtors. | Case No. **11-60039-11** |
| **ERIC WARREN HEFTY**, **CHERYL RAE HEFTY**, and **THE CORNER DEVELOPMENT**,<br><br>　　　　　　　　　Plaintiffs.<br><br>-vs-<br><br>**MOUNTAIN WEST BANK, N.A.**,<br><br>　　　　　　　　　Defendant. | Adv No. **11-00040** |

# MEMORANDUM OF DECISION

At Butte in said District this 15th day of September, 2011.

Pending in this adversary proceeding are two Motions for summary judgment ("Motions") filed by Defendant Mountain West Bank, N.A. ("MWB") (Docket Nos. 10 and 26) which seek dismissal of the Plaintiff's complaint. Plaintiffs filed objections and set both motions for hearing on September 20, 2011. Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(d) provides that unless the Court orders otherwise, no formal hearing on a motion for summary judgment will be conducted and the Court shall proceed to consider and rule upon the merits of any such motion ...." After review of the Motions, objections, briefs, supporting documents, and the record, for the reasons set forth below both Motions for Summary Judgment will be denied.

1

This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. 7052 (applying FED. R. CIV. P. 52 in adversary proceedings).

This Court has exclusive jurisdiction of the above-captioned Chapter 11 bankruptcy case and jointly administered Case No. 11-60040-11 under 28 U.S.C. § 1334(a). The parties' pleadings admit that this Court has jurisdiction of this adversary proceeding, and that this is a core proceeding under 28 U.S.C. § 157. Plaintiffs filed their "Complaint to Determine Secured Status and to Avoid Unperfected Lien" on May 18, 2011, averring a claim for relief to avoid MWB's liens or interests in real property security under 11 U.S.C. § 544(a)(3), 11 U.S.C. § 1107, and MONT. CODE ANN. ("MCA") §§ 71-7-107 and 71-1-202, and demanding a declaratory judgment that an "Agreement of Understanding Regarding Deeds" ("AOU") between the parties, including quitclaim deeds, "vitiated and superceded" prior recorded deeds of trust which Plaintiffs had given MWB as security for loans. Proceedings to determine the validity, extent or priority of liens, or the adjustment of the debtor-creditor relationship, all are core proceedings under 28 U.S.C. § 157(b)(2).

## FACTS

MWB originally filed its Statement of Uncontroverted Facts ("SOUF") combined with its first Motion for Summary Judgment and brief. Mont. LBR 7056-1(a)(1) requires a "separate" statement of uncontroverted facts. After Plaintiffs filed a motion to strike, MWB filed an "Amended Statement of Uncontroverted Facts" ("SOUF") in support of its first Motion. MWB's amended SOUF (Dkt. 18) sets forth the following facts:

> 1. Loan number 360002007 is a loan which Defendant Mountain West Bank made to Plaintiff, The Corner Development, LLC on October 13, 2006

(Promissory Note Attached as Exhibit 1) (HT[1] pg 67, line 24 to pg 68 line 15). Loan number 360002007 was secured by Deeds of Trust (Attached as Exhibits 2 & 3) (HT pg 68, line 20 to pg 69, line 4) on a parcel of real property described as:

> Lots 6, 7, 8, 9 and 10, Block 1, South Missoula, a platted subdivision in the City of Missoula, Missoula County, Montana, according to the official plat; of record in Book 1, Copy of Plats page 19, records of Missoula County, Montana.
>
> EXCEPTING AND RESERVING THEREFROM the Southwesterly 2 feet of Lot 10, AND FURTHER EXCEPTING AND RESERVING THEREFROM that part of said Lots conveyed to the City of Missoula, in Book 41 of Deeds page 499 and in Book 57 of Deeds page 402, records of Missoula County, Montana. The Real Property or its address is commonly known as 901 S HIGGINS, MISSOULA, MT 59801. The Real Property tax identification number is 875109.

2. The aforementioned deeds of trust were never re-conveyed (HT pg 69, lines 5-7). The loan matured on June 20, 2009 (Exhibit 9, pg 1 at 6th paragraph). The total amount was not paid and the loan is in default.

3. Defendant Mountain West Bank, NA made loan number 360002516 to Plaintiffs Eric Hefty and Cheryl Hefty on December 26, 2008 (Promissory Note Attached as Exhibit 4). Loan number 360002516 was secured by a first position Deed of Trust (Attached as Exhibit 5) (HT pg 53, line 11 to pg 54, line 14) on a parcel of real property described as:

> UNITS 400, 402, 404, 406, 408, 410, 412, 414, 416 AND 418 OF THE UNIVERSITY FLATS CONDOMINIUM SITUATED ON LOTS 11 AND 12 AND FRACTIONAL LOTS 13 AND 14, AND THAT PART OF THE VACATED ALLEY WHICH IS BOUNDED ON THE NORTHWESTERLY SIDE BY SIDE LOTS 11 AND 12 AND IS BOUNDED ON THE SOUTHEASTERLY SIDE BY SAID LOTS 13 AND 14, ALL IN BLOCK 1 OF SOUTH MISSOULA, A PLATTED SUBDIVISION IN MISSOULA COUNTY, MONTANA, ACCORDING TO THE OFFICIAL RECORDED PLAT THEREOF.
>
> ACCORDING TO THE DECLARATION OF CONDOMINIUM UNDER UNIT OWNERSHIP ACT PERTAINING TO THE

---

[1] "Hearing Transcript" is found at Dkt. 56 in Case No. 11-60039-11.

>UNIVERSITY FLATS CONDOMINIUM RECORDED IN BOOK 830 OF MICRO RECORDS AT PAGE 1176 AND THE BYLAWS OF THE UNIVERSITY FLATS CONDOMINIUM OWNERS ASSOCIATION, INC. RECORDED IN BOOK 830 OF MICRO RECORDS AT PAGE 1179.
>
>TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS, LIMITED COMMON ELEMENTS AND THE EASEMENTS APPURTENANT TO THIS UNIT AS DEFINED IN THE DECLARATION OF THE CONDOMINIUM UNDER UNIT OWNERSHIP ACT PERTAINING TO THE UNIVERSITY FLATS CONDOMINIUM.
>
>The real property or its address is commonly known as 400-418 ROOSEVELT ST, MISSOULA, MT 59801-4102. The Real Property tax identification number is 0402902.

4. Loan number 360002516 was secured by Deeds of Trust (Attached as Exhibits 6 & 7) (HT pg 54, line 23 to pg 55, line 11) on a parcel of real property described as:

>Lots 2, 3, 4, 5, 6 and 7 of Osprey Heights, a platted subdivision in Missoula County, Montana, according to the official recorded plat thereof.
>
>The Real Property or its address is commonly known as LOTS 2 – 7 OF OSPREY HEIGHTS ON BIG FLAT ROAD, MISSOULA, MT 59801. The Real Property tax identification number is 3529909, 3530002, 3530108, 3530204, 3530300 & 3530406.

5. In addition Loan number 360002516 was secured by an Assignment of Rents (Attached as Exhibit 8) (HT pg 55, line 17 to pg 56, line 8). None of the rents have ever been turned over to Mountain West Bank, NA. (HT pg 57, lines 2 - 16)[.] None of the aforementioned deeds of trust were ever re-conveyed (HT pg 55, lines 8-14). The loan is in default (HT pg 56, line 11 to pg 57, line 1).

6. On January 6, 2010 the parties entered into an Agreement of Understanding Regarding Deeds (Attached as Exhibit 9) [the "AOU"].

7. Both parties were represented by counsel in negotiating and signing the Agreement of Understanding and both parties had input into the contents of the Agreement of Understanding (HT pg 22, line 2 to pg 24, line 5; pg 38, line 18 to pg 41, line 21; and, pg 72, lines 7-8).

8. At the time of the Agreement of Understanding, no additional funds were given/loaned to the Plaintiffs. (HT pg 72, lines 9-11; pg 40, lines 8-25; and, pg 41, lines 19-24).

9. At the time of the Agreement of Understanding, loan number 36002007 was cross-collateralized by adding the Corner Condominiums as additional collateral to that loan (Exhibit 9, pg 2 at paragraph #4).

10. The Agreement of Understanding gave the Plaintiffs additional time to cure and to prolong foreclosure (HT pg 24, line 7 to pg 25, line 10; pg 41, lines 19-24; and, pg 44, lines 8 - 16).

11. The Agreement of Understanding gave Mountain West Bank, NA a truncated or simplified foreclosure process (Id). Specifically, the Agreement of Understanding provided that, in the event the Plaintiffs failed to meet their obligations under the Agreement of Understanding, Mountain West Bank, NA would have the right to record the Quitclaim Deeds (Exhibit 9, pg 2, paragraph #3).

12. The Plaintiffs failed to make the payments agreed to in the Agreement of Understanding (HT pg 24, line 17 to pg 25, line 4). The Quitclaim Deeds signed in conjunction with the Agreement of Understanding were never recorded (HT pg 25, lines 8-10 and Complaint paragraph 13).

13. Mountain West Bank, NA complied with the terms of the Agreement of Understanding and the Plaintiffs derived the benefits of the Agreement of Understanding. Specifically, the Plaintiffs were not foreclosed upon and were given the additional time to cure their default(s).

14. Plaintiffs did not comply with the terms of the Agreement of Understanding. Specifically, they never made the $750,000.00 worth of payments in the one-year period following the signing of the Agreement.

Plaintiffs filed a response in opposition to MWB's first Motion on July 8, 2011, and filed a Statement of Genuine Issues (Dkt. 15), which sets forth the following disputed facts:

1. Where [sic] The Corner Development loan, 360002007 ("The Corner Loan") and the Hefty loan, 360002516 ("the Hefty Loan") cross collateralized at the time of the execution of their respective loan documents?

2. What was the purpose of the Hefty Loan and why was it not cross collateralized with the Corner Loan [Plaintiffs believe that this was due to the fact that

5

>Mountain West Bank was under regulatory pressure and wanted to show regulators an equity infusion by the Hefts [sic] into The Corner project]?
>
>3. Was the Agreement of Understanding Regarding Deeds (the "Agreement of Understanding"), the deeds executed pursuant to it or some notice or memorandum thereof recorded in the public record?
>
>4. Did the cross collateralization provisions of the Agreement of Understanding violate [MCA] § 71-1-206?
>
>5. Is the fact that "Both parties were represented by counsel in negotiating and signing the Agreement of Understanding and both parties had input into the contents of the Agreement of Understanding" relevant in light of the fact that Plaintiffs are acting as debtors in possession and, as such, have the powers of a trustee; and that this action is brought pursuant to 11 U.S.C. § 544(s) [sic] wherein the trustee is granted the powers of a bona fide purchaser for value of real property regardless of the trustee's actual knowledge?
>
>6. Was the intention of the Agreement of Understanding to convert The Corner and Hefty deeds of trust into a contract for deed? If so, is this legal under Montana law?
>
>7. Was the Agreement of Understanding with its cross collateralization and "truncated" foreclosure procedure so substantially different from the prior deeds of trust that it represented an extinguishment of the prior deeds of trust?

MWB filed a reply to Plaintiffs' objection, and on August 11, 2011, MWB filed its Second Motion for Summary Judgment. On page 5 of the Second Motion MWB states that it is similar to the first Motion, but that it is filed "to provide the Court with additional evidence to support dismissal of the complaint." MWB filed a second SOUF (Dkt. 27) which alleges:

>1. The parties entered into a Change in Terms Agreement (Attached as Exhibit 1 to Second Motion for Summary Judgment) which clearly shows the same terms included in the Agreement of Understanding.
>
>2. The parties signed a new Deed of Trust (Attached as Exhibit 2 to Second Motion for Summary Judgment) on January 6, 2010 which clearly demonstrates that it was the intent of the parties to add the University Apartments as additional collateral to loan number 360002007.
>
>3. The Deed of Trust (Exhibit 2) was recorded with the Missoula County Clerk

and Recorder on January 14, 2010 as document number 201000914 in Book 853, Page 1195.

4. No Contract for Deed or Mortgage was intended, desired or negotiated by the parties in the drafting and signing of the Change in Terms Agreement or the Agreement of Understanding (Affidavit of John Seeberger Attached to Second Motion for Summary Judgment).

5. On January 6, 2010 the parties signed a new Deed of Trust (Mountain West Bank, NA's Reply Exhibit 2) in conjunction with the Change in Terms Agreement (Exhibit 1) and The Agreement of Understanding (Affidavit of John Seeberger Attached to Second Motion for Summary Judgment).

Plaintiffs filed a response in opposition to the Second Motion, and filed a "Statement of Genuine Issues II" (Dkt. 31) which alleges two additional issues of material fact:

1. The Change in Terms Agreement and Deed of Trust (Exhibits 1 and 2 to MWB's Second Motion for Summary Judgment) are inadmissible in light of MWB's admission in its Answer, paragraph 13, which admitted the first sentence of paragraph 13 of the Compliant [sic] that "Neither the Workout Agreement [the "Agreement of Understanding Regarding Deeds"] nor the quitclaim deeds, nor any notice or memorandum thereof was recorded in the public record."

2. There is an issue as to the intention of the parties in the Agreement of Understanding particular insofar as bona fide purchasers are concerned. Paragraph 6 of John Seeberger's affidavit which is the basis for the assertion that "No Contract for Deed or Mortgage was intended, desired or negotiated by the parties in the drafting and signing of the Change in Terms Agreement or the Agreement of Understanding" Is [sic] objected to as argumentative. Further, this issue remains even if the January 6, 2010 Deed of Trust is considered. The (recorded) Deed of Trust was granted pursuant to the Small Tract Financing Act which provides for a 120 day foreclosure period. [MCA] § 71-1-315. The (unrecorded) Agreement of Understanding has only a five day foreclosure peroid [sic]. MWB has and is continues [sic] to assert rights on the basis of a secret lien (or perhaps a secret and contradictory amendment to a recorded lien).

In addition to the above-listed facts, the Court granted Plaintiffs' motion to take judicial notice of the May 19, 2011, hearing testimony in these Chapter 11 cases, and MWB's Proofs of Claim. Further, papers filed in the underlying bankruptcy cases are subject to judicial notice in

7

related adversary proceedings. *O'Rourke v. Saubord Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989).

In Case No. 11-60039-11, MWB filed a "Motion for Determination of Status of Ownership of Real Property" which alleged that certain of the real property listed above and in the Debtors' bankruptcy schedules is not properly included in the bankruptcy estate, and that MWB is the owner based upon the above-described quit claim deeds. This Court denied MWB's motion by Order entered on February 24, 2011 (Dkt. 17 in 11-60039-11), stating that the relief MWB "seeks falls squarely under F.R.B.P. 7001, which delineates the matters that must be addressed through an adversary proceeding." The Court granted MWB leave to seek the relief it requests through an adversary proceeding.

MWB has not initiated an adversary proceeding. The Plaintiffs filed their complaint to determine MWB's secured status on May 18, 2011. MWB filed an answer and affirmative defenses, but did not include a counterclaim. MWB's Motions specifically request that the complaint be dismissed, and do not request affirmative relief regarding its rights to the real property.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no

disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W.*

*Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## II. Contentions of the Parties.

MWB's Motions both seek dismissal of the complaint with prejudice and on the merits. MWB contends that no genuine issues of material fact exist and that it is entitled to summary judgment as a matter of law. MWB contends that its loans to the Plaintiffs are in default, that the AOU is not in dispute, but MWB admits that the AOU had the effect of cross collateralizing one of the loans[2]. MWB argues that the AOU did not vitiate or supercede the deeds of trust which are legitimate, recorded liens. MWB argues that the quit claim deeds which are part of the AOU were not intended to be security, and are not deemed a mortgage under MCA § 71-1-107 because MWB already had prior recorded deeds of trust as security, and the AOU was intended only to give the Plaintiffs more time and no new money was loaned. With respect to § 544(a)(3), MWB contends that any bona fide purchaser ("BFP") for value of the property which is the subject of the AOU would have actual notice of the recorded deeds of trust and their encumbrance on the property. MWB further contends that no voidable transfer ever occurred, the quit claim deeds were never recorded and the deeds of trust were never re-conveyed.

---

[2]In its answer MWB had denied cross collateralization had occurred in the AOU.

The Plaintiffs' brief in opposition to MWB's first Motion argues that it should be summarily denied, first, because the Plaintiffs' knowledge of the AOU and quit claim deeds is irrelevant under § 544(a)(3), and second because the AOU and quit claim deeds are "deemed a mortgage" under MCA § 71-1-107. Plaintiffs contend that the AOU is in essence a contract for deed and is so radically different from the prior deeds of trust, because of the cross collateralization and Debtors' waiver of their rights under foreclosure statutes, that the AOU supercedes the deeds of trust. MWB filed a reply calling the cross collateralization not a material issue of fact, and that other alleged issues are questions of law not fact. MWB argues that the parties did not intend an equitable mortgage or contract for deed in the AOU and accompanying deeds.

MWB's Second Motion for Summary Judgment was filed "to provide the Court with additional evidence to support dismissal of the Complaint." Dkt. 26. The Second Motion rehashes MWB's reasons, and non-reason, for the partial cross collateralization in the AOU, and the intent of the parties not to create a contract for deed. MWB repeats that the quit claim deeds were not intended to be security for Plaintiffs' obligations under the AOU, and are not deemed a mortgage under MCA § 71-1-107. MWB argues that its recorded deeds of trust would have given any BFP notice of its liens against the properties, and its liens cannot be avoided under § 544(a)(3) because "No transfer ever occurred." Plaintiffs filed an objection[3] but no brief.

**III. Analysis.**

As Debtors-in-Possession the Plaintiffs have rights and powers of a trustee pursuant to 11

---

[3]Plaintiffs' objection (Dkt. 29) refers to a brief in opposition "filed herewith." No such brief was filed with Dkt. 29.

11

U.S.C. § 1107(a), and have "strong-arm powers", including a hypothetical status as a perfected BFP of real property "without regard to any knowledge of the trustee" to avoid any transfer of property of the debtor that is voidable by a BFP of real property under § 544(a)(3). *Brandt v. Esplanade of Central Montana, Inc., et al. (In re Esplanade of Central Montana, Inc.)*, 19 Mont. B.R. 162, 176 (Bankr. D. Mont. ); *Robinson v. Nichols*, 16 Mont. B.R. 27, 33-34 (Bankr. D. Mont. 1997). MWB argues that a BFP would have actual knowledge of its recorded deeds of trust, but that does not shield the unrecorded quit claim deeds from operation of § 544(a)(3). A purchaser's knowledge of the recorded deeds of trust is irrelevant to whether the quit claim deeds may be avoided.

State law determines whether a trustee's status as a BFP will defeat the rights of persons against whom the trustee seeks to assert § 544(a)(3). *Esplanade*, 19 Mont. B.R. at 176, citing *In re Professional Inv. Properties of America*, 955 F.2d 623, 627 (9th Cir. 1992), *cert. denied*, 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992) (other citations omitted). Based on the present record, on the petition date, under § 544(a)(3) the Plaintiffs as BFPs would appear to have priority over the unrecorded quit claim deeds, under Montana's first-in-time/first- in-right rule, MCA § 70-21-304. *Esplanade*, 19 Mont. B.R. at 176; *Luloff v. Blackburn* (1995), 274 Mont. 64, 68-9, 906 P.2d 189, 191. Therefore, the Court concludes that MWB failed to satisfy its burden of proof under Rule 56(c) to show that no genuine issue exists as to any material fact and that MWB is entitled to judgment as a matter of law dismissing the complaint to avoid the quit claim deeds under § 544(a)(3).

The question remains whether the AOU and quit claim deeds vitiated and superceded the recorded deeds of trust, but the Plaintiffs do not have the burden of proof on that question at this

summary judgment stage, MWB as the moving party has the burden. Since MWB failed its burden for summary judgment on whether the quit claim deeds may be avoided under § 544(a)(3), it follows that MWB failed to satisfy its burden to show that Plaintiffs' claim for relief that the deeds of trust were vitiated and superseded by the quit claim deeds.

Plaintiffs' complaint alleges that the quit claim deeds were intended to be security for Plaintiffs' obligations under the AOU and thus are "deemed a mortgage" under MCA § 71-1-107 which provides:

> 71-1-107. Transfers of interest
>
> (1) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is deemed a pledge.

MWB argues that no genuine issue of material fact exists that the quit claim deeds were made only as security, because no new money was loaned under the AOU and MWB already had recorded deeds of trust. MWB points to language in the quit claim deeds that which states that it is not intended as security. However, in analyzing transactions between parties, courts are not bound by what the parties called it. *Bermes v. Sylling* (1978), 179 Mont. 448, 457, 587 P.2d 377, 383.

"When a debt is shown to exist between the parties, a deed absolute on its face delivered in connection with the indebtedness will be construed as a mortgage when it is shown that the instrument was intended to secure the indebtedness." *Hanson v. Bonner* (1983), 202 Mont. 505, 510 661 P.2d 421, 424, citing *Boysun v. Boysun* (1962), 140 Mont. 85, 368 P.2d 439. "The vital test in determining that question is whether the indebtedness continues to exist. If the

indebtedness remains uncanceled the absolute deed is treated in equity as a mortgage." *Bermes v. Sylling*, 179 Mont. at 457, 587 P.2d at 383, quoting *Nikles v. Barnes* (1969), 153 Mont. 113, 117, 454 P.2d 608, 610.

The parties do not dispute that the quit claim deeds were delivered to MWB as part of the AOU, and therefore they were delivered in connection with the indebtedness. With respect to the "vital test," no genuine issue exists that the indebtedness continues to exist. As to whether the quitclaim deeds were intended to secure the indebtedness, the AOU states at section 1 on page 1: "The deeds will be held by Lender [MWB]. In the event that the deeds are recorded, as dictated by this Agreement, Lender will accept the Deeds in full satisfaction of the balance due on loan numbers 360002007 and 360002516, including interest, costs and attorneys' fees."

For purposes of the two pending Motions for Summary Judgment, the Court views the above-quoted language as sufficient to conclude that MWB failed to satisfy its burden of showing that no genuine issue of material fact exists on the element of whether the quit claim deeds were intended to secure the indebtedness, and that MWB is entitled to summary judgment as a matter of law. MWB agreed to accept the Deeds "in full satisfaction of the balance due" on the indebtedness. Because a genuine issue of material fact is shown to exist, both of MWB's Motions must be denied.

Another genuine issue of material fact remains as to whether the AOU and quit claim deeds vitiate and supercede the deeds of trust, as averred in the complaint. The AOU does not include language reconveying the deeds of trust, which are of record. However, the burden of proof is on the moving party, MWB, and not on the Plaintiffs. Given the reasons above requiring denial of MWB's Motions, there is no reason to decide this issue.

MWB's Motions seek dismissal of this adversary proceeding on the merits, with prejudice. That result, however, would leave important questions unanswered which ultimately must be determined in the related Chapter 11 cases.

MWB contends that no transfer took place by means of the AOU, and that the quit claim deeds were not recorded. However, that argument ignores MCA § 70-21-102: "Unrecorded instruments valid between parties. An unrecorded instrument is valid as between the parties and those who have notice thereof." The Plaintiffs seek to avoid MWB's lien or interest in the real property pursuant to § 544(a)(3). Otherwise, if the Plaintiffs are unable to avoid the quit claim deeds under § 544(a)(3), their legal and equitable rights and interest in the real property depend on state law. *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000). Bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Id.,* citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979).

If this Court were to grant MWB's Motions and dismiss this adversary proceeding, MWB's rights to the property would be determined by state law, either as the grantee under the quit claim deeds[4], which are valid between the parties despite being unrecorded under MCA § 70-21-102, or as a party with a claim secured by the deeds of trust on the properties as MWB asserts in the Proofs of Claim it filed in these Chapter 11 cases. This is a determination which must be made in order for the confirmation process to be completed one way or another, but a proceeding to determine the nature and extent of a lien or other interest requires an adversary

---

[4]MWB's motion to determine status of ownership of the real property asserted that it was the owner of certain of the subject properties, not the Debtors.

15

proceeding, and if the Court were to grant the relief sought in MWB's Motions this adversary proceeding would be dismissed without the required determination.

The treatment of MWB as owner of the real property by means of the quit claim deeds is notably different than the treatment MWB would be entitled to as a creditor with an allowed claim secured by the property under notes and deeds of trust. "In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074-75 (9th Cir. 2002). Section 544(a)(3) is one Code provision by which the Plaintiffs seek to avoid both the quit claim deeds and the deeds of trust. Depending on the outcome at trial on these claims, MWB may be either an unsecured creditor, or a secured creditor, or the owner of the real property by operation of the quit claim deeds. Dismissal of this adversary proceeding as requested by MWB would leave the Court and the parties without the necessary procedural vehicle to make this necessary determination.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b) as arising under Title 11, U.S.C., and related to cases under chapter 11.

2. This adversary proceeding to determine the validity, extent or priority of MWB's liens or interest, and the adjustment of the debtor-creditor relationship, are core proceedings under 28 U.S.C. § 157(b)(2)(K) and (O).

3. MWB failed its burden of proof under FED. R. BANKR. P. 7056, incorporating FED. R. CIV. P. 56(c) of showing that no genuine issue of material fact exists with respect to MWB's two

Motions for Summary Judgment and that it is entitled to summary judgment as a matter of law.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above denying both MWB's First Motion for Summary Judgment (Dkt. 10) and MWB's Second Motion for Summary Judgment (Dkt. 26), and vacating the hearing on both Motions for Summary Judgment scheduled for September 20, 2011.

                                      BY THE COURT

                                      /s/ Ralph B. Kirscher
                                    HON. RALPH B. KIRSCHER
                                    U.S. Bankruptcy Judge
                                    United States Bankruptcy Court
                                    District of Montana