UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ERIC WARREN HEFTY**<br>**CHERYL RAE HEFTY**,<br><br>Debtors.<br><br>**THE CORNER DEVELOPMENT**,<br><br>Debtor.<br><br>**ERIC WARREN HEFTY**, **CHERYL RAE HEFTY**, and **THE CORNER DEVELOPMENT**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**MOUNTAIN WEST BANK, N.A.**,<br><br>Defendant. | Case No. **11-60039-11**<br><br><br><br><br>Case No. **11-60040-11**<br><br><br><br><br><br><br><br><br>Adv No. **11-00040** |

## MEMORANDUM OF DECISION

At Butte in said District this 13th day of February, 2012.

In this adversary proceeding the Plaintiffs/Debtors, who are borrowers from Defendant Mountain West Bank, N.A. ("MWB"), seek to avoid MWB's recorded deeds of trust securing loans under 11 U.S.C. § 544(a)(3), based on the theory that later unrecorded quit claim deeds executed pursuant to a "Workout Agreement" between the parties "vitiate and supercede the

1

deeds of trust."  After a trial and review of the record and the parties' post-trial briefs, and applicable law, a separate Judgment shall be entered for MWB dismissing the complaint with respect to the recorded deeds of trust, but avoiding the unrecorded quit claim deeds, for the reasons set forth below.

The parties agree this Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).  This adversary proceeding to determine the nature and validity of MWB's liens is a core proceeding under 28 U.S.C. § 157(b)(2)(K).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

The Court held a trial in this proceeding at Missoula on December 21, 2011.  Plaintiffs Eric Warren Hefty ("Eric"), Cheryl Rae Hefty ("Cheryl") (together "Heftys") and The Corner Development, LLC ("Corner Development") were represented by attorney Harold V. Dye ("Dye") of Dye & Moe, PLLP, of Missoula.  Plaintiffs called Eric to testify, and also called MWB's officer John Seeberger ("Seeberger"), and MWB's vice president/bank counsel Amy Randall ("Randall").  MWB was represented by attorney Thomas Pardy ("Pardy") of Helena, and MWB called Eric, Randall, Seeberger and title company employee Barbara Amaya ("Amaya") to testify in its case-in-chief.  Plaintiffs' exhibits ("Ex.") 1, 2, 3, 4[1], 5, and MWB's Ex. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, and R all were admitted into evidence without objection.  At the conclusion of the parties' cases-in-chief the Court closed the record, granted the parties time to file briefs, which have been reviewed by the Court together with the record and applicable law.  This matter is ready for decision.

---

[1] Ex. 4 and I are the same.  For simplicity it will be referred to as Ex. 4.

# FACTS

The approved Pretrial Order sets forth the following agreed facts on pages 2-3:

    A. Plaintiffs are the Debtors in Possession in these jointly administered Chapter 11 cases. Defendant is a creditor of Plaintiffs who claims to be a secured creditor.

    B. On or about October 13, 2006, Plaintiff The Corner Development, LLC ("The Corner") to secure obligations owed Defendant under loan number 360002007, executed a certain Construction Deed of Trust in favor of Defendant. A true copy of the first page of this construction deed of trust was attached to the complaint herein as Exhibit A[2].

    C. Also on or about October 13, 2006, Plaintiffs Eric and Cheryl Hefty (the "Heftys"), also to secure obligations owing Defendant under loan number 360002007, executed a certain Deed of Trust in favor of Defendant. A true copy of the first page of this deed of trust was attached to the complaint herein as Exhibit B[3].

    D. On or about December 26, 2008, the Heftys, to secure certain obligations owed Defendant under loan number 3600002516 (which were separate and distinct from those under loan number 360002007), executed a certain Deed of Trust in favor of Defendant. A true copy of the first page of this deed of trust was attached to the complaint herein as Exhibit C[4].

    E. On or about January 6, 2010 Plaintiffs and Defendant entered into a certain Agreement of Understanding Regarding Deeds (hereinafter the "Workout Agreement") a true copy of which was attached as Exhibit D[5] to the complaint herein.

    F. Pursuant to the terms of the Workout Agreement, Plaintiffs executed and delivered to Defendant a series of quit claim deeds to the various condominium units and lots encumbered by Exhibits A, B and C. Other than the

---

[2]In an attempt to avoid confusion, this Construction Deed of Trust was admitted into evidence as Ex. B.

[3]This deed of trust was admitted into evidence as Ex. D.

[4]This deed of trustee was admitted as Ex. G.

[5]The Workout Agreement was admitted as Ex. I and Ex. 4.

3

>    deed to one condominium unit which was sold in June 2010, the deeds remain in the possession of Defendant to this day.
>
>    G. Neither the Workout Agreement nor the quit claim deeds was recorded in the public record.

Unlike the quit claim deeds and Workout Agreement, the deeds of trust were recorded. Ex. B is the construction deed of trust, and shows that it was recorded in Missoula County, Montana in October 2006[6].

Plaintiff Corner Development defaulted under the terms of the note for loan 360002007 (hereinafter "Loan 2007). Heftys defaulted under loan 360002516 ("Loan 2516") by the date of the Workout Agreement. Ex. 4. Seeberger testified that the Heftys told MWB in negotiations for the Workout Agreement that they could not perform, and they defaulted by January 1, 2010.

Ex. J is a change in terms agreement for the construction Loan 2007 and was dated with an earlier date than the Workout Agreement on December 28, 2009. Seeberger testified that Ex. J was dated earlier than Ex. 4 because they thought the transaction would be concluded quicker, but that the parties signed Ex. J on January 6, 2010, notwithstanding its date. He testified that Ex. J was prepared not by MWB's counsel, but rather by using a software system called LaserProbe.

Ex. J refers to "Warranty Deeds" as part of the Workout Agreement rather than quit claim deeds. Seeberger testified that the parties changed the term to quit claim deeds in Ex. 4 and the change did not make it into Ex. J. Ex. J, paragraph 5, adds as additional collateral a second deed of trust on the University Flats Condominium. The Court notes that Ex. J, after setting forth the terms by which the Workout Agreement modifies Loans 2007 and 2516, states at paragraph 7:

---

[6]The exact date of recordation on Ex. B is illegible.

4

"All other terms and conditions remain the same." Ex. R is a change in terms agreement for Loan 2516, dated December 28, 2009, which also provides that the Workout Agreement modifies Loans 2007 and 2516. At paragraph 5 Ex. R states: "All other terms and conditions remain the same."

Ex. K is the deed of trust dated December 28, 2009, but signed by Heftys on January 6, 2010, which granted MWB several units of the University Flats Condominium ("University Condo") to secure the indebtedness of $2,270,882.52. Seeberger testified that MWB felt it had to have more collateral in order to loan the Heftys more money to complete the Corner Condo, and MWB felt that the University Condo was appropriate security. Ex. K was recorded on January 14, 2010. Eric testified that a bona fide purchaser of the University Condo would have notice of Ex. K. Randall and Eric each testified that Heftys pledged the University Condo as additional security for the Corner Condo by executing Ex. K. Seeberger testified that the Heftys did not offer any additional collateral for Loan 2516.

Ex. M is a quit claim deed of Unit 400 of the University Condo granted by Heftys to MWB dated January 6, 2010. Seeerbger testified that the Plaintiffs' attorney did not want to provide the warranties included in a warranty deed, so they prepared quit claim deeds instead. Ex. L is a quit claim deed for the Corner Condo signed by Eric for Corner Development, dated January 6, 2010. Ex. L is a quit claim deed for Lot 2 of Osprey Heights signed by Eric, dated January 6, 2010.

Randall explained that the quit claim deeds are legal in Montana, and convey whatever interest a grantor of the quit claim has to the grantee. She testified that quit claim deeds do not wipe out prior deeds of trust, and that as the grantee under the quit claim deeds MWB's interest

5

would be subject to prior recorded deeds of trust.

Seeberger and Randall testified that MWB granted Plaintiffs a partial release with respect to a single unit. No evidence exists in the record of other releases, reconveyances or the surrender of the recorded deeds of trust.

Randall is MWB's vice president and corporate counsel. She testified that she drafted the Workout Agreement, Ex. 4, in the course of two months of negotiations between MWB and the Heftys, who were represented by attorney Gary Chumrau. She testified that the purpose of Ex. 4 was to give the Plaintiffs more time to resolve their default, and that Plaintiffs wanted to salvage the loans. She testified that the dollar amounts and due dates in the Workout Agreement came from Chumrau and the Heftys.

The Workout Agreement, Ex. 4, was signed by the parties on January 6, 2010, on the same date the parties signed Ex. J, K, L, M and N. Ex. 4 does not provide for the surrender, reconveyance or cancellation of the recorded deeds of trust by MWB except as discussed below, and it does not forgive the loans secured or deem them satisfied short of payment. At paragraph 2, Ex. 4 provides that upon payment to MWB of proceeds from the sales of condominiums, MWB "will destroy any of the Deeds that cover the property sold . . . ." A similar provision at paragraph 12 provides that in the event the Debtors pay the loans MWB "will destroy the Deeds." At paragraph 4, Ex. 4 provides that Loan 2007 is renewed for a period of one year, along with a reduction of the interest rate.

Paragraphs 5 and 6 of Ex. 4 require Debtors to make a regular payment on loan 360002516, and if they fail then MWB has the right to record the quit claim deeds upon 5 days written notice. Seeberger testified that Heftys' attorney felt that 5 days was enough notice to

6

record the quit claim deeds. Randall testified that the provision allowed MWB to record the quit claim deeds if the Debtors defaulted and not have to go through a foreclosure process. Without the Workout Agreement, Randall testified that MWB would have had the option of proceeding with a trustee's sale under the provisions of the deeds of trust, renegotiating, or proceeding with judicial foreclosure.

Randall testified that the Heftys made their first payment due under Ex. 4, and that Heftys could have cured their default under the Workout Agreement if they had sold more condominium units. Eric testified that the due date for the payments under the Workout Agreement was the 25th day of each month, but that MWB's office was closed on the due date when he tried to pay. He testified that the following Monday the teller at MWB refused to accept payment, but that later MWB accepted payment, and MWB did not record a quit claim deed based on that late payment.

Seeberger testified that he sent Corner Development a letter notifying the Plaintiffs of a default and giving them 5 days to cure. Ex. 5 is Seeberger's letter dated January 7, 2011. It states that the $500,000 balance due under the Workout Agreement remained unpaid, and that MWB intends to record the quit claim deeds on January 13, 2011. Randall testified that Loan 2516 was already in default, and that the promissory notes signed by the Plaintiffs provided that a default on one of the loans constitutes a default under both.

Heftys filed their Chapter 11 petition on January 12, 2011. Corner Development filed its petition on January 13, 2011. Seeberger and Randall testified that if the Debtors had not filed their bankruptcy petitions MWB would have recorded the quit claim deeds on the sixth day after the notice. The quit claim deeds have never been recorded. Barbara Amaya testified as to title

commitments and a guarantee issued by First American Title Company in Ex. O and P, for both the Corner Development and the University Flats Condominium. She testified that Ex. P shows MWB as beneficiary of trust indentures and assignment of rents with respect to the University Condo. Ex. O shows a construction deed of trust naming MWB as beneficiary at exception 16, but there is no mention of the Workout Agreement or quit claim deeds on Ex. O or P.

Randall testified that none of the deeds of trust were reconveyed to the Plaintiffs by MWB, and are still in MWB's possession, including the deed of trust for Heftys' property known as Osprey Heights, Ex. D. She testified that if the Plaintiffs had performed their obligations under the Workout Agreement MWB would have destroyed the deeds.

MWB filed Proof of Claim No. 5 in Heftys' Chapter 11 case on April 8, 2011, asserting a secured claim in the amount of $684,000, and a total claim in the amount of $3,277,006.07. In the Corner Development Chapter 11 case MWB filed Proof of Claim No. 8 on April 8, 2011, asserting a claim in the amount of $3,277,006.07, with a secured claim component of $830,000. Plaintiffs filed their complaint in this adversary proceeding on May 18, 2011.

## DISCUSSION

The agreed Pretrial Order describes the nature of Plaintiffs' action as involving allegations "that a certain 'Agreement of Understanding Regarding Deeds' dated January 6, 2010 vitiated and superceded previous deeds of trust and that Plaintiffs are entitled to avoid any interest of Defendant in the described property pursuant to 11 U.S.C. § 544(a)(3)."

Section 544(a) provides in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that

8

>is voidable by –
>
>(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
>* * * *
>
>(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

As Debtors-in-Possession, Plaintiffs have rights and powers of a trustee pursuant to 11 U.S.C. § 1107(a), including a trustee's "strong-arm powers" which include a perfected lien on the real property as a judicial lien creditor under 11 U.S.C. § 544(a)(1), and in addition hypothetical status as a perfected bona fide purchaser ("BFP") of real property to avoid any transfer of property of the debtor that is voidable by a bona fide purchaser of real property under § 544(a)(3). *Brandt v. Esplanade of Central Montana, Inc., et al. (In re Esplanade of Central Montana, Inc.)*, 19 Mont. B.R. 162, 175-76 (Bankr. D. Mont. 2001); *Robinson v. Nichols*, 16 Mont. B.R. 27, 33-34 (Bankr. D. Mont. 1997).

Section 541(a)(1) allows a trustee in bankrupcty rights as a judicial lien creditor to avoid unperfected interests in real and personal property. *Brandt*, 19 Mont. B.R. at 175; *Richardson v. Nichols*, 16 Mont. B.R. 27, 33 (Bankr. D. Mont. 1997). There is no dispute that the quit claim deeds executed by the Heftys as part of the Workout Agreement were not recorded before the petition date. Thus the quit claim deeds are unperfected and are subject to avoidance by the Debtors under § 544(a)(1) and § 544(a)(3). *Brandt*, 19 Mont. B.R. at 176-77; *Richardson v. Nichols*, 16 Mont. B.R. at 33-34. However, the issue remains whether the recorded deeds of

9

trust, Ex. B, D, G, and K, also are void or avoided by means of, as Plaintiffs contend, being vitiated and superceded by the quit claim deeds and Workout Agreement.

The Court notes that the Workout Agreement, Ex. 4, provides a means that upon sales of units of the Corner Condo, University Condo, and Osprey Lots, deeds that cover the property sold would be destroyed.  Ex. 4, sections 2 and 12.  Otherwise, Plaintiffs have failed to specify any contract provision of the Workout Agreement which provides that the recorded deeds of trust are vitiated and superceded.  Plaintiffs argue that nowhere in the Workout Agreement are the recorded deeds of trust preserved.  Plaintiffs have it backwards.  The Workout Agreement explains the specific modifications to Loans 2007 and 2516 at sections 4 and 5, which renew or extend the terms of the loans.  Otherwise the evidence specifically shows in the change in terms agreements for the loans, Ex. J and R, that all other terms and conditions of Loans 2007 and 2516 are to "remain the same."  In the absence of any evidence to the contrary, those provisions preserve the recorded deeds of trust.

State law determines whether a trustee's status as a BFP will defeat the rights of persons against whom a trustee seeks to assert his or her powers under § 544(a)(3).  *Brandt*, 19 Mont. B.R. at 176; *In re Professional Inv. Properties of America*, 955 F.2d 623, 627 (9th Cir. 1992), *cert. denied*, 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992).  In Montana, a grant of real property is conclusive, with an exception for a BFP.  MONT. CODE ANN. § 70-20-303 provides:

> **Grant conclusive – exception for good faith purchaser.**  A grant of an estate in real property is conclusive against the grantor and against every one subsequently claiming under the grantor except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is duly recorded.

A BFP is:

> one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive of any adverse rights, claims, interest or equities of others in and to the property sold.

*Brandt*, 19 Mont. B.R. at 176, quoting *Luloff v. Blackburn*, 274 Mont. 64, 69, 906 P.2d 189, 191 (1995) (quoting *Foster v. Winstanley* (1909), 39 Mont. 314, 316, 102 P. 574, 579 (citations omitted)).

Under Montana law, a party who duly records a deed in the appropriate registry prevails against subsequent purchasers or encumbrancers. *See* MONT. CODE ANN. § 70-21-304 ("Every conveyance of real property, other than a lease for a term not exceeding 1 year, is void against any subsequent purchaser or encumbrancer, . . ., of the same property or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded."); *U.S. v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005) (citing cases). The evidence shows that the deeds of trust were properly recorded prior to the date of filing of the Debtors' bankruptcy petitions. Thus § 70-20-303 and § 70-21-304 MWB would prevail under Montana law.

Plaintiffs contend that this Court's conclusions regarding the Workout Agreement and quit claim deeds in its Memorandum of Decision (Dkt. 34) denying MWB's motion for summary judgment, were not contradicted by any evidence admitted at trial. They argue that the Workout Agreement and quit claim deeds were an attempt to convert the deeds of trust into mortgages, and into a contract for deed, to avoid the foreclosure process in violation of Montana's one form of action statute, MONT. CODE ANN. § 71-1-222(1). Debtors argue that a BFP could not know that MWB was entitled under the AOU to record the quit claim deeds on only 5 days notice, and that the BFP would not have known that other properties served as collateral for the University

11

Condo loan. Based on that, Debtors conclude that no question exists that the Workout Agreement was intended to supercede the prior deeds of trust, because the quit claim deeds could be recorded after 5 days without following the required foreclosure procedures. Debtors argue that the unrecorded Workout Agreement is the relevant security document, not the recorded and superceded deeds of trust, and Debtors request judgment declaring that the recorded deeds of trust were superceded and vitiated by the Workout Agreement, and avoiding the Workout Agreement under § 544(a)(3).

MWB argues that the deeds of trust were recorded in compliance with Montana statutes and put all BFP's on notice of the encumbrances. MWB denies that the Workout Agreement was an attempt to convert the deeds of trust into a contract for deed, and contends that no party intended a contract for deed and that the transaction was in no way illegal because the quit claim deeds were never recorded. MWB contends that the worst case scenario, if the Workout Agreement is deemed a mortgage, is that it must foreclose by notice and sale or by judicial action. On the issue of whether the quit claim deeds vitiated and superceded the deeds of trust, MWB argues that all evidence and testimony proves that the purpose of the AOU was to give Plaintiffs additional time to cure their default, and MWB was willing to forego its rights for over a year in exchange for the right to file the quit claim deeds. MWB argues no evidence exists that MWB intended to reconvey the deeds of trust, and that no reconveyance occurred. MWB contends that Plaintiffs failed to satisfy their burden of proof under § 544(a)(3) to avoid MWB's valid deeds of trust, because a BFP would have had notice of their recordation.

### I. § 71-1-107.

Plaintiffs argue that the Workout Agreement and quit claim deeds vitiate and supercede

the deeds of trust because they were essentially a mortgage and violated § 71-1-107(1). Section 71-1-107(1) provides: "Every transfer of an interest in property, other than in trust, made only as security for the performance of another act is to be deemed a mortgage, except when in the case of personal property it is accompanies by actual change in possession, in which case it is deemed a pledge."

Older case law provides helpful guidance. *Donohoe v. Landoe* (1952), 126 Mont. 351, 355, 251 P.2d 560, 562. In *Donohoe* there was ample evidence from which the court concluded that the antecedent indebtedness was cancelled at the time a deed in question was given and that the failure to surrender the promissory notes was due to an oversight. 126 Mont. at 357, 251 P.2d at 563. That contrasts with the instant case in which the debts were not cancelled, and the lack of surrender of the recorded deeds of trust has not been shown by the evidence to be due to an oversight. MWB did not surrender or cancel the deeds of trust, and instead negotiated for the quit claim deeds with the Plaintiffs. The court discussed a Missouri case with facts similar to the instant case:

> The Supreme Court of Missouri in *Bailey v. St. Louis Union Trust Co.*, 188 Mo. 483, 87 S.W. 1003, 1005, expressed the view which we think is persuasive here, when it said: 'The idea that this deed was given to the trust company as a mere security for their debt, and was intended to be merely an equitable mortgage that would have to be foreclosed by a proceeding in a court of equity, is not only repugnant to its terms, and those of the contemporary agreement, but is negatived by all the circumstances attendant upon their execution and the conduct of the parties thereafter. At the time they were executed, the defendant had a deed of trust on the property to secure its debt, and it is sheer nonsense to suppose that they would have exchanged this better form of security for such a mortgage. In fact, it was to prevent a foreclosure sale under that better security then impending that the deed was made, in order that thereafter the property might be sold by the trust company at private sale without the necessity of any foreclosure. We know of no principle of law or equity that forbids the making of such a contract. The purpose to vest an absolute title to the property in the trust company by the deed,

>and thereby obviate the necessity of a foreclosure of any kind, is manifested alike by the written instruments, the circumstances under which they were executed, and the conduct of the parties. Hence the chancellor held that the deed was not an equitable mortgage, and did not err in so ruling.'

*Donohoe*, 126 Mont. at 358, 251 P.2d at 563.

The court in *Donohoe* wrote: "If there is no debt left to be secured as here, then obviously there would be no occasion for any security. *Morrison v. Jones,* 31 Mont. 154, 77 P. 507. There being no existing indebtedness, the instruments must be taken as they purport to be on their face, viz., a conveyance amounting to a sale with the option in plaintiffs to repurchase." *Donohoe*, 126 Mont. at 358, 251 P.2d at 563-64 (other citations omitted). In the instant case the evidence shows plainly that the debts were not cancelled. Loans 2007 and 2516 were extended by Ex. 4, but otherwise the terms and conditions of the loans remain the same. Ex. J, R. The facts shown by the record are distinguishable from *Donohoe* in that no evidence exists that the Plaintiffs' indebtedness to MWB was cancelled, or that the deeds of trust were surrendered, reconveyed or destroyed pursuant to the terms of the Workout Agreement because of sales, and no evidence exists that the failure to surrender or reconvey the deeds of trust was due to a mere oversight as in *Donohoe*, 126 Mont. at 357, 251 P.2d at 563. Since the debts were not cancelled, the Court sees no grounds by which the recorded deeds of trust should be deemed vitiated and superseded by the Workout Agreement and quit claim deeds based upon § 71-1-107.

**II. § 71-1-202**.

Plaintiffs contend that the deeds of trust are vitiated and superseded by the Workout Agreement and quit claim deeds because they violated § 71-1-202 by providing for the immediate recording of the quit claim deeds without a foreclosure and sale. Section 71-1-202

provides:

> **Mortgage not considered conveyance – recovery of possession.** A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale. When the mortgage confers a power of sale, as mentioned in 71-1-111, possession may be recovered according to the terms of the mortgage.

Plaintiffs contend that since the Workout Agreement allows for immediate recordation of the quit claim deeds by MWB in the event of default, it is illegal and unenforceable and, they argue, it follows that the deeds of trust are vitiated and superseded under § 71-1-202. Alternatively, Plaintiffs argue that the quit claim deeds and Workout Agreement comprised a mortgage, and later that they comprised a contract for deed. The Court need not determine which applies because Montana law requires that MWB prevail whether they are a mortgage or contract for deed.

The Montana Supreme Court in *Erickson v. First Nat. Bank of Minneapolis* (1985), 215 Mont. 350, 697 P.2d 1332[7], discussed § 71-1-202:

> Section 71-1-202, MCA, creates a right to foreclosure and sale in the mortgagor. This section, however, does not prohibit a waiver of this right by the mortgagor. In 1887, this Court recognized, the right to foreclosure notwithstanding, that if a mortgagor consents to the mortgagee taking possession of the property after the mortgage becomes due, the mortgagor cannot withdraw that consent until the debt is paid. *Fee v. Swingly* (1887), 6 Mont. 596, 599, 13 P.375, 376. A mortgagor may thus waive the right to foreclosure after he defaults on the mortgage.
>
> In this case, the record reveals that the Crofts consented to waive their right to foreclosure after they defaulted in June 1981. Subsequent to the July 1981 recording of the first quit claim deed they executed with the assignment, the Crofts executed another quit claim deed to the Bank. Although the exact circumstances under which this consent was given are not revealed in the record,

---

[7]*Erickson* was overruled on an issue unrelated to § 71-1-102. *Arrowhead School Dist. No. 75, Park County v. Klyap*, 2003 MT 294, ¶ 56, 318 Mont. 103, 79 P.3d 250, 260.

> the voluntariness of the consent has not been questioned.
>
> Further, the waiver of the right to foreclosure includes consent to the possession of the mortgagee and must include the waiver of the equity of redemption. *Fee v. Swingly, supra*. Were this not true, any consent to forego the foreclosure process would be meaningless.

*Erickson*, 215 Mont. at 357, 697 P.2d at 1336-37.

In *Erickson* the mortgage between the bank and borrowers was terminated upon the recording of a quit claim deed to the Bank. 215 Mont. at 357, 697 P.2d at 1336-37. In the instant case the Plaintiffs filed their Chapter 11 petitions before MWB could record its quit claim deeds, and the prior deeds of trust were not terminated as in *Erickson*.

Plaintiffs contend that the recorded deeds of trust are vitiated and superceded by the Workout Agreement and quit claim deeds because they are in violation of Montana law. However, the court in *Erickson* explains that this type of transaction is not in violation of Montana law:

> When Starhaven failed to cure its default, the Bank terminated the Croft-Starhaven escrow, recorded the quit claim deed executed by Starhaven, and then attempted to retake possession of the property. All this was done pursuant to the terms of the contract. This type of default provision is valid in a contract for deed in Montana. *Hares v. Nelson* (1981), 195 Mont. 463, 637 P.2d 19.

*Erickson*, 215 Mont. at 358-59, 697 P.2d at 1337-38.

Montana case law thus provides no support for Plaintiffs' contention that the Workout Agreement and quit claim deeds were in violation of § 71-1-202 because they took away Plaintiffs' right to foreclosure. *Id.* Plaintiffs negotiated with MWB and entered into a Workout Agreement in which Plaintiffs waived their rights to foreclosure proceedings under the deeds of trust. This contractual waiver of foreclosure rights is valid under Montana law. *Id.*

When Plaintiffs failed to cure their default pursuant to the terms of the Workout Agreement MWB was authorized, until the bankruptcy filings, to record the quit claim deeds or, at its discretion, it could have proceeded with foreclosure. Plaintiffs have failed their burden to show under Montana law that the Workout Agreement and quit claim deeds were in violation of Montana law so as to vitiate and supersede the deeds of trust. *Erickson*, 215 Mont. at 357-59, 697 P.2d at 1336-38. Accordingly, Plaintiffs' strong arm power under § 544(a)(3) fails with respect to MWB's rights under § 70-20-303 and § 70-21-304 as the holder of recorded deeds of trust.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).

2. This adversary proceeding to determine the nature and validity of MWB's liens is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

3. The three unrecorded quit claim deeds evidenced by Exhibits L, M, and N are avoidable under the Plaintiffs under the trustee's "strong arm powers," 11 U.S.C. § 544(a)(3).

4. The Workout Agreement between the parties, Ex. 4/I, did not provide for the cancellation of the debts owed by Plaintiffs to Defendants; and did not provide for the surrender, reconveyance or cancellation of the recorded deeds of trust which secured the promissory notes signed by the Plaintiffs except under specific conditions which the Plaintiffs did not satisfy when they did not perform under the Workout Agreement.

5. The Workout Agreement and/or the quit claim deeds did not "vitiate or supercede" the recorded deeds of trust under MONT. CODE ANN.§ 71-1-107 or § 71-1-202.

6. Plaintiffs' strong arm power under § 544(a)(3) fails with respect to MWB's rights

17

under § 70-20-303 and § 70-21-304 as the holder of recorded deeds of trust.

**IT IS ORDERED** a separate Judgment shall be entered in conformity with the above, (1) in favor of Plaintiffs avoiding the three quit claim deeds evidenced by Ex. L, M, and N under 11 U.S.C. § 544(a)(3) and providing that the quit claim deeds henceforth shall have no legal force or effect; and (2) otherwise in favor of the Defendant Mountain West Bank N.A., dismissing the remainder of Plaintiffs' complaint.

        BY THE COURT

        */s/ Ralph B. Kirscher*
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana